UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME ELI MCCOY,<br><br>   Plaintiff,<br><br>   v.<br><br>SAC COUNTY JAIL,<br><br>   Defendant. | No.  2:22-cv-01769-CKD P<br><br><br><br>ORDER |

Plaintiff is a county inmate proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

On March 9, 2023, the court appointed counsel Jessica Arena for the limited purpose of drafting and filing an amended complaint in this matter.  Counsel filed the first amended complaint on June 23, 2023, and it is now before the court for screening.

**I.    Motion for the Appointment of Counsel**

As counsel's appointment has ended based on the filing of the amended complaint, plaintiff filed a renewed motion for the appointment of counsel.  ECF No. 16.  District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1); Terrell

1

v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id.

Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the further appointment of counsel at this time.

## II.  Screening Requirement

As plaintiff was previously advised, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

## III.  Allegations in the Amended Complaint

At all times relevant to the allegations in the amended complaint, plaintiff was a mentally ill inmate at the Sacramento County Jail, although it is still not clear to the court whether plaintiff was a pretrial detainee or was serving a sentence.[1]  Named as defendants are the County of Sacramento, Sacramento County Sheriff Jim Cooper, four named sheriff's deputies employed at the Sacramento County Jail, a John Doe defendant, and the City of Sacramento.  ECF No. 18 at 3.

The amended complaint generally alleges that plaintiff was denied his mental health medication from April 26, 2022, until May 25, 2022, and was also placed in solitary confinement.  As a result, his mental health deteriorated and he "repeatedly cut himself and banged his head against the wall until it bled."  ECF No. 18 at 4.  During one particular mental health crisis on

---

[1] In the prior screening order of February 2, 2023, the court identified the legal standards that applied to both pretrial detainees as well as those serving a sentence.  See ECF No. 11 at 5-6.

December 26, 2022, plaintiff was sprayed with pepper spray and then tackled by a correctional officer who is not identified in the amended complaint. ECF No. 18 at 6.

Plaintiff also challenges numerous conditions of his confinement including the presence of mold and sewage water in his cell, the lack of a blanket, and lack of time out of his cell while in solitary confinement.

In the first cause of action, plaintiff contends that "[d]efendants failed to provide Mr. McCoy with minimally adequate mental health treatment under Constitutional standards and [d]efendants' own policies and procedures" in violation of the Fourth, Eighth and Fourteenth Amendments. ECF No. 18 at 7.

In the second cause of action, plaintiff asserts that defendants used excessive force against him by pepper spraying him in response to his mental health crisis on December 26, 2022 in violation of the Fourth, Eighth, and Fourteenth Amendments. ECF No. 18 at 9.

Next, plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to train officers on "how to respond to persons with physical and mental impairments;… failing to respond reasonably in dealing with a mentally ill person who was experiencing an episode of psychological distress; [and]… by disciplining Plaintiff for actions found by CDCR's own mental health staff to be related to his mental illness, and… punishing Plaintiff in ways that CDCR's own mental health staff knew was detrimental to Plaintiff's mental health."[2] ECF No. 18 at 11.

**IV.   Analysis**

After conducting the required screening, the court finds that the amended complaint fails to state a claim upon which relief can be granted under federal law.[3] First and foremost, the factual allegations in the complaint are not linked to any named defendant. Rather than identifying the specific actions of each of the defendants that makes them liable, the causes of

---

[2] Although the amended complaint references the California Department of Corrections and Rehabilitation ("CDCR"), plaintiff was a county inmate and not in state custody.

[3] Because the amended complaint was filed by counsel, the court has not applied the rule of liberal construction that would apply to a pro se pleading. See e.g., Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

3

action simply list all defendants in the aggregate. The only attempt in the amended complaint to link any specific defendants to particular constitutional violations is based on the December 26, 2022 incident involving pepper spray for which plaintiff alleges that defendants Milligan, Davis, Ma, and Powder were responsible. ECF No. 18 at 3. However, the factual allegations in the amended complaint merely state that plaintiff's "cell was unnecessarily flooded with a chemical agent that burned his flesh and then [he was] tackled by a correctional officer." ECF No. 18 at 6. The amended complaint does not identify which defendant deployed the pepper spray or tackled plaintiff. That does not sufficiently link any named defendant to the alleged constitutional violations asserted in the amended complaint. See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

To the extent that plaintiff sues the County of Sacramento, there is no identified municipal policy or practice identified in the amended complaint that is alleged to be the driving force for the asserted constitutional violations. See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). In fact, the amended complaint alleges that defendants violated the jail's policies and procedures on the treatment of mentally ill inmates which led to the constitutional violations asserted in the amended complaint. Therefore, the policies themselves were not the driving force for the constitutional violations. As a result of these defects, there is no properly plead Monell claim against the County of Sacramento.

Regarding the City of Sacramento, the amended complaint is contradictory in that it alleges that both Sacramento County and the City of Sacramento are "responsible for the training, supervision, and discipline of all Sacramento County Jail employees." ECF No. 18 at 2-3. Because each of these defendants are separate municipal entities, they cannot both be responsible for the operation of the Sacramento County Jail. The amended complaint does not contain any factual allegations linking the City of Sacramento to the alleged constitutional violations against plaintiff.

Additionally, the amended complaint does not raise a proper ADA or RA violation for failing to train jail officers. Nor does the treatment, or lack of treatment, concerning plaintiff's mental health condition provide a basis upon which to impose liability under the RA or the ADA.

Burger v. Bloomberg, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions not a basis for RA or ADA claims); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice."). Plaintiff's allegations go to the adequacy of the treatment or assistance he was receiving for his mental illness, not to the denial of services because of his disability. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) (citation omitted), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (en banc). Plaintiff has not alleged any facts that support a claim he was subjected to intentional discrimination by reason of his disability and excluded from participation in any program or activity.

For all these reasons, the amended complaint is dismissed for failing to state a claim. The court will, however, grant leave to file a second amended complaint.

**V.  Plain Language Summary for Pro Se Party**

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the allegations in your amended complaint and determined that they do not state any claim against the defendants. Your amended complaint is being dismissed, but you are being given the chance to fix the problems identified in this order.

**Although you are not required to do so, you may file a second amended complaint within 30 days from the date of this order. If you choose to file a second amended complaint, pay attention to the legal standards attached to this order that may apply.**

An amended complaint should include:

1) The name of defendant(s);

2) The action(s) performed or failed to be performed by defendant(s);

3) The date or time frame of the action(s);

4) How the action caused injury to you; and,

5) The specific constitutional provision the defendant(s)' action violated.

5

### VI. Standards Governing Amended Complaints

If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or statutory rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for the appointment of counsel (ECF No. 16) is denied without prejudice.

2. Plaintiff's amended complaint is dismissed.

3. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint.

4. The failure to file a second amended complaint within 30 days will result in a recommendation that this action be dismissed.

/////

/////

Dated: September 15, 2023

/s/ Carolyn K. Delaney
_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/mcco1769.14amd.new

**Legal Standards**

The following legal standards are provided based on plaintiff's pro se status as well as the nature of the allegations in the complaint.

**A.     Linkage**

The civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

**B.     Supervisory Liability**

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding is only liable for his or her own misconduct."). When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged; that is, a plaintiff must allege some facts indicating that the defendant either personally participated in or directed the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

**C.     Monell Liability**

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. Monell v. Dep't of Social Services, 436 U.S. 585 at 691, 694 (1978). "Instead, it is

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell, 436 U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). To properly plead a Monell claim based on an unconstitutional custom, practice, or policy, plaintiff must demonstrate that (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) such policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. See Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). The municipal policy at issue must be the result of a " 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.' " Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)).

### D. Deliberate Indifference

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

**E.    Excessive Force**

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which has been defined as "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7

(1992). The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency in violation of the Eighth Amendment. Whitley, 475 U.S. at 327.

### F.     Conditions of Confinement

It is unclear whether plaintiff was a pretrial detainee or serving a sentence during the relevant time frame alleged in the amended complaint. As a result, the court will provide plaintiff with the relevant legal standards governing challenges to his conditions of confinement as a pretrial detainee as well as a convicted inmate.

In order for a prison official to be held liable for alleged unconstitutional conditions of confinement, the prisoner must allege facts that satisfy a two-prong test. Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The first prong is an objective prong, which requires that the deprivation be "sufficiently serious." Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at 834). In order to be sufficiently serious, the prison official's "act or omission must result in the denial of the 'minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074. The objective prong is not satisfied in cases where prison officials provide prisoners with "adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d at 732 ("[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d at 731.

The second prong focuses on the subjective intent of the prison official. Peralta, 774 F.3d at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard requires a showing that the prison official acted or failed to act despite the prison official's knowledge of a substantial risk of serious harm to the prisoner. Id. (citing Farmer, 511 U.S. at 842); see also Redman v. Cnty. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere negligence on the part of the prison official is not sufficient to establish liability. Farmer, 511 U.S. at 835.

"The more protective fourteenth amendment standard applies to conditions of confinement when detainees ... have not been convicted of a crime." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (internal quotations and citations omitted). The state may detain a pretrial detainee "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536 (1979). To not constitute punishment, the due process clause of the Fourteenth Amendment "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

**G.    ADA/RA**

To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

> (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.

1 | 2001).
2 |     While the RA has the additional requirement that the program or activity receive federal
3 | funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and
4 | obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same
5 | analysis to claims brought under both statutes," <u>Zukle v. Regents of the Univ. of Cal.</u>, 166 F.3d
6 | 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).